IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MASCHIO GASPARDO S.p.A.,

    Plaintiff/Counterdefendant,

v.

PRECISION PLANTING, LLC,

    Defendant/Counterclaimant.

Civil Action No. 22-1394-RGA

MEMORANDUM OPINION

Timothy Devlin, Andrew Peter DeMarco, Peter Akawie Mazur (argued), Joel W. Glazer, and Neil Benchell (argued), DEVLIN LAW FIRM LLC, Wilmington, DE,

    Attorneys for Plaintiff/Counterdefendant.

Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Scott R. Brown (argued), Matthew B. Walters, and Todd A. Gangel, HOVEY WILLIAMS LLP, Overland Park, KS,

    Attorneys for Defendant/Counterclaimant.

November 14, 2025

1

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is the issue of claim construction of multiple terms in U.S. Patent No. 8,770,121 ("the '121 patent"). The parties submitted a Joint Claim Construction Brief (D.I. 168) and Joint Supplemental Claim Construction Chart (D.I. 153) with additional exhibits filed separately (D.I. 154–162). I heard oral argument on November 4, 2025.

## I. BACKGROUND

On October 24, 2022, Maschio Gaspardo filed a complaint against Precision Planting, alleging infringement of the '121 patent. (D.I. 1 at 3). The '121 patent discloses "a seed distribution element for precision pneumatic seed drills, a sowing element for such machines and a seed drill including a plurality of such sowing elements." ('121 patent, col. 1, lines 15–18). Precision then filed an answer with defenses and counterclaims. I held a Markman hearing on November 6, 2023. (D.I. 75). I construed six terms of the '121 patent. (D.I. 70). On October 7, 2024, Maschio's case against Precision was stayed pending the Patent Trial and Appeal Board's ("PTAB") decision of the *inter partes review* ("IPR") of the '121 patent. (D.I. 122). The stay was lifted on March 8, 2025, after the PTAB found all challenged claims to be patentable. (D.I. 143, 144). In light of the PTAB's IPR decision, the parties requested additional claim construction. (D.I. 150, 151).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'"

2

*SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (alteration in original) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted). "While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1323).

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the

3

patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (quoting *Markman*, 52 F.3d at 980). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

### III. CONSTRUCTION OF AGREED-UPON TERM

I adopt the following agreed-upon construction:

| Claim Term | Claims | Construction |
|---|---|---|
| "thrust-bearing element" | '121 patent, claims 1–3, 8, and 10–12 | Means-plus-function term under 35 U.S.C. § 112 ¶ 6.<br><br>The recited function is to bear thrust, or more specifically to withstand at least some of the axial load produced by the disc on the seal.<br><br>The structure corresponding to this function is shaft 27 with flanging 30, and thrust bearing-plate 31, and its equivalents. |

### IV. CONSTRUCTION OF DISPUTED TERMS

The parties agree that independent claims 1 and 10 of the '121 patent are representative for the purpose of claim construction. (D.I. 168 at 1–2). Those claims state:

1. A seed distribution element for precision pneumatic seed drills, comprising:
    a sowing disc which is rotated by a motor-driven *transmission drive shaft* at controlled speed,
    a housing with a fixed portion and a portion which is movable relative to the fixed portion and can be closed against the fixed portion,
    a seed collection chamber being defined in the fixed portion,
    a pneumatic suction chamber being defined in the *movable portion*,
    the sowing disc being interposed between the fixed and *movable portions* and having opposed surfaces delimiting the chambers,
    the sowing disc having at least one ring of selector holes extending between the opposed surfaces, and
    a seal which is arranged on the *movable portion* and is capable of sliding contact with the facing surface of the disc when the fixed and *movable portions* are closed against one another,
    wherein a pressure differential is provided between the opposed surfaces in

4

>       the region of a circumferential segment of the ring of holes,
>    wherein the seed distribution element further comprises a thrust-bearing
>       element of the sowing disc, which thrust-bearing element is
>       ***supported rotatably in the movable portion*** in order to withstand at
>       least some of the axial load produced by the disc on the seal.

('121 patent, col. 4, lines 13–40 (disputed terms bolded and italicized)).

> 10. A kit for the retrofitting of seed distribution elements of precision pneumatic
>    seed drills wherein the distribution elements are of the type including:
>    a sowing disc which is rotated by a motor-driven ***transmission drive shaft*** at
>       controlled speed,
>    a housing with a fixed portion and a portion which is movable relative to the
>       fixed portion and can be closed against the fixed portion,
>    a seed collection chamber being defined in the fixed portion,
>    a pneumatic suction chamber being defined in the ***movable portion***,
>    the sowing disc being interposed between the fixed and ***movable portions*** and
>       having opposed surfaces delimiting the chambers,
>    the sowing disc having at least one ring of selector holes extending between the
>       opposed surfaces, and
>    a seal which is arranged on the ***movable portion*** and is capable of sliding
>       contact with the facing surface of the disc when the portions are closed
>       against one another,
>       wherein a pressure differential is provided between the opposed surfaces in
>          the region of a circumferential segment of the ring of holes,
>       wherein the kit comprises:
>    the ***movable portion*** pre-assembled with: a thrust-bearing element of the
>       sowing disc, which thrust-bearing element is ***supported rotatably in***
>       ***the movable portion*** in order to withstand at least some of the axial
>       load produced by the disc on the seal.

('121 patent, col. 5, line 4–col. 6, line 6 (disputed terms bolded and italicized)).

### 1. "supported rotatably in the movable portion" (claims 1–3, 8, and 10–12)

   a. *Maschio's proposed construction*: supported rotatably entirely in the space defined by the movable portion
   b. *Precision's proposed construction*: the thrust-bearing element must be entirely within the movable portion of the housing
   c. *Court's construction*: supported rotatably entirely in the movable portion

Maschio argues that the Court should construe "supported rotatably in the movable portion" as "supported rotatably in the space defined by the movable portion." (D.I. 168 at 9). This proposed construction was adopted by the PTAB during IPR proceedings. (*Id.*). Maschio

5

contends that the PTAB properly construed the term by looking to the specification and not limiting the construction to the preferred exemplary embodiment. (*Id.* at 10–11). While the embodiment shows the thrust-bearing element not only entirely supported by but also entirely within the movable portion, Maschio argues that it is improper to require the thrust-bearing element be entirely within the movable portion because nothing in the claims requires it. (*Id.* at 11). On the other hand, Maschio argues that the claims explicitly require the thrust-bearing element be supported in the movable portion. (*Id.* at 13). This requirement is further supported, Maschio argues, by the claims and portions of the specification describing a kit for easy retrofitting. (*Id.* at 21). Thus, Maschio argues that Precision's proposed construction is improper because it does not refer to where the thrust-bearing element is supported. (*Id.*).

Precision argues that Maschio made written and oral disclaimer of claim scope during the PTAB proceedings. (*Id.* at 14). Precision points to portions of Maschio's written submissions and oral testimony to the PTAB to argue that Maschio made a disclaimer requiring "that the entire thrust-bearing element be in the movable portion." (*Id.* at 14–18 (internal citations omitted)). Precision argues its current proposed construction is supported by the IPR proceedings because the PTAB and Maschio "acknowledge[d] during the IPR that 'supported rotatably within the movable portion' conveys both the location of the [thrust-bearing element]'s support and the location of the [thrust-bearing element] itself." (*Id.* at 19 (quoting D.I. 154 at 697)). Precision also argues that its proposal is not inconsistent with the PTAB's construction because the PTAB's construction "does not speak to the location of the [thrust-bearing element] and its support." (*Id.*).

I find that Maschio did not make a disclaimer. "For a statement during prosecution to qualify as a disavowal of claim scope, it must be so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Genuine*

6

*Enabling Tech. LLC v. Nintendo Co., Ltd.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (internal quotations omitted). The prosecution disclaimer doctrine extends to IPR proceedings, including the doctrine's requirement that "any such statements must be both clear and unmistakable." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017).

Maschio's statements were not clear and unmistakable. To make its disclaimer argument, Precision quotes an excerpt of Maschio's IPR briefing:

> Like *Inpro*, *disclaimer is appropriate in this situation to construe the entire [thrust-bearing element] as being within the movable portion*. That is the construction of the [thrust bearing element] disclosed in the '121 Patent that accomplishes the retrofitting advantage. . . . Because the '121 Patent provides no alternative construction for the [thrust-bearing element] to achieves [sic] the retrofitting advantage, nor has any party explained how the [thrust-bearing element] could be supported all or partially in the fixed portion but still achieve the flagged advantage, *the [thrust-bearing element] must be construed as being entirely within the movable portion*.

(D.I. 168 at 17 (quoting D.I. 154 at 658–59)). However, as edited, the excerpt lacks important context, including that the portion after the ellipses is in a different section of the brief. I now repeat the excerpt, but with the context, including the section break, added back in.

> Like *Inpro*, disclaimer is appropriate in this situation to construe the entire [thrust-bearing element] as being within the movable portion. That is the construction of the [thrust bearing element] disclosed in the '121 Patent that accomplishes the retrofitting advantage. *To construe the [thrust-bearing element] as supported anywhere else would impermissibly enlarge the '121 patent.*
> . . . . Because the '121 Patent provides no alternative construction for the [thrust-bearing element] to achieves [sic] the retrofitting advantage, nor has any party explained how the [thrust-bearing element] could be supported all or partially in the fixed portion but still achieve the flagged advantage, the [thrust-bearing element] must be construed as being entirely within the movable portion.

(D.I. 154 at 658–59) (additional sentence in italics). Read as a whole, the excerpt from Maschio's briefing does not present a clear and unmistakable disclaimer.

The portion from the first paragraph is unclear. It is inconsistent about whether it is discussing location or support.

7

The portion from the second paragraph is from a different section of Maschio's IPR briefing. (*Id.*). This section addresses claim construction "[r]egardless of whether the Board deems *Inpro* applicable." (*Id.* at 658). There is no clear and unmistakable disclaimer here. As in the preceding section, Maschio states that the thrust-bearing element must be construed as being entirely within the movable portion because no party has "explained how the [thrust-bearing element] could be *supported* all or partially in the fixed portion but still achieve the flagged advantage." (*Id.* at 659 (emphasis added)). Read on its own and in the context of the preceding section, Maschio's IPR briefing does not include a clear and unmistakable disclaimer.

The lack of a clear and unmistakable disclaimer is highlighted when reading Maschio's briefing as a whole. Later in its IPR briefing, Maschio cites back to the two sections which Precision uses to argue for a disclaimer. Maschio cites to the first section as support for its proposition "that [thrust-bearing element] should be construed as being entirely *supported* in the movable portion." (*Id.* at 659 (emphasis added)). Maschio then cites to the second section to back its argument that "the '121 Patent makes clear the flagged advantages is not achieved if a portion of the [thrust-bearing element] is *supported* outside the movable portion." (*Id.* (emphasis added)). Maschio's citations to these sections support the idea that the thrust-bearing element must be entirely *supported* within the movable portion; it does not provide clear and unmistakable evidence that Maschio made a disclaimer requiring the entire thrust-bearing element to be within the movable portion.

Maschio's IPR briefing addressed Precision's argument that "parts of the [thrust-bearing element] that when closed against the fixed portion could potentially protrude into the fixed portion." (*Id.* at 660). Maschio responded, "Regardless of whether a minute section of the [thrust-bearing element] protrudes outside the movable portion, it would still be supported entirely by the

8

movable portion." (*Id.* (emphasis added)). Maschio's statement is evidence that the support and location of the thrust bearing element are not the same. As Maschio's IPR briefing only discusses the location of the thrust-bearing element with reference to the location of the support, the briefing does not demonstrate a clear and unmistakable disclaimer with regard to the location of the thrust-bearing element.

Precision cites to multiple portions of Maschio's oral argument in front of the PTAB. (D.I. 168 at 15–19, 23–25). However, this argument fails to show a clear and unmistakable disclaimer for two reasons. First, during oral argument before the PTAB, Maschio stated, "Claim 10 is clear that the thrust-bearing element is part of the movable portion. Claim 1 says it's in—at least part of it is in." (D.I. 154 at 621:21–22). Neither sentence is clear that the entire thrust-bearing element must be within the movable portion. However, the statement related to claim 1 directly counters Precision's argument that Maschio clearly and unmistakably asserted the claims require the thrust-bearing element to be entirely within the movable portion. Second, after the oral argument, the PTAB requested additional briefing from the parties. Maschio submitted briefing (D.I. 154 at 653–61) that I have already discussed. This briefing conflated the location of the thrust-bearing element with the location of the support for it. (*Id.*). As this briefing followed the oral argument, it highlights the lack of clarity in Maschio's arguments both during oral argument and after. Thus, Maschio's statements during oral argument before the PTAB are not a clear and unmistakable disclaimer.

Without a disclaimer, the Court must follow the traditional requirements of claim construction and consider the intrinsic evidence, beginning with "the words of the claims themselves." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996). I agree with Maschio that nothing in the claims or specification require the thrust-bearing element

9

to be entirely located in the movable portion. I disagree with Precision that the PTAB determined that Maschio made a disclaimer on which the PTAB then relied. The PTAB's final decision stated that "question is not whether the patentee disclaimed coverage over structures in which the thrust-bearing element is not located entirely in the movable portion of the housing. Instead, we must simply ascertain what the patentee meant by 'supported rotatably in the movable portion.'" (D.I. 154 at 696). Nothing about this statement shows that the PTAB evaluated or relied on a disclaimer at all. Rather, the PTAB ultimately construed the term without a limitation concerning the location of the thrust-bearing element. (D.I. 154 at 693–97). Similarly, I disagree with Precision that Maschio's statements during the IPR are helpful in construing the claim term now. As addressed above, Maschio was not clear in differentiating when it was arguing that the claims and/or specification discussed the location of the thrust-bearing element itself versus the support for it. Thus, I find that it would be improper to construe the term with a limitation requiring that the thrust-bearing element be entirely located within the movable portion.

I agree with Maschio that the claims require that the term must be construed to specify that the thrust-bearing element is being "supported rotatably" in the movable portion. Both claim 1 and claim 10 identify the thrust-bearing element as "supported rotatably" in the movable portion. ('121 patent, col. 4, lines 38–39, col. 6, line 4). Construing the term without "supported rotatably" would improperly read an express limitation out of the claims. *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993).

I find that Maschio's proposal "in the space defined by the movable portion" to be unnecessary. The parties have requested that this Court separately construe the term "movable portion." (D.I. 168 at 38). Adding "in the space defined by" does not clarify the term "movable portion" more than the independent construction does. Nor do the claims discussing "supported

10

rotatably in the movable portion" use "movable portion" in a unique way with additional limitations. For similar reasons, I find that Precision's proposal of "within the movable portion of the housing" to be unnecessary. Precision's addition of "the thrust-bearing element" is also unnecessary when putting the construction in the context of the claims, both of which state "the thrust-bearing element" directly before "supported rotatably in the movable portion." ('121 patent, col. 4, lines 38–39, col. 6, lines 3–4). Thus, I construe the term "supported rotatably in the movable portion" as "supported rotatably entirely in the movable portion."

2. **"in the movable portion" (claims 1–3, 8, and 10–12)**

    a. *Maschio's proposed construction*: plain and ordinary meaning
    b. *Precision's proposed construction*: the thrust-bearing element must be entirely within the movable portion of the housing
    c. *Court's construction*: dismissed as moot

At oral argument on claim construction, the parties agreed that the dispute over this term did not involve an argument independent of the dispute over the first term. I think the argument over this term is moot.

3. **"transmission drive shaft" (claims 1–3, 8, and 10–12)**

    a. *Maschio's proposed construction*: a shaft that is driven by a motor and is part of, or associated with, a transmission
    b. *Precision's proposed construction*: the Court's previous construction of plain and ordinary meaning with an additional limitation that the same structure cannot simultaneously be a "transmission drive shaft" and a "thrust-bearing element"
    c. *Court's construction*: "transmission drive shaft" has its plain and ordinary meaning and is a separate component from the thrust-bearing element.

Maschio argues that the Court should adopt the PTAB's construction of "transmission drive shaft," that is, the plain and ordinary meaning: "a shaft that is driven by a motor and is part of, or associated with, a transmission." (D.I. 168 at 28–29).

Precision seeks to have the Court construe "transmission drive shaft" as the plain and ordinary meaning with the limitation that the same structure cannot simultaneously be a

11

"transmission drive shaft" and a "thrust-bearing element." (*Id.* at 30). Precision makes two arguments in favor of its stance. First, Precision argues that Maschio made a disclaimer under *Becton* that the same structure cannot be both a transmission drive shaft and a thrust-bearing element. (*Id.* at 31–34 (citing *Becton, Dickson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010))). Second, Precision argues that Maschio has not met its burden to produce evidence that overcomes the presumption against overlap between separately claimed components. (*Id.* at 36–38 (citing *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 130 F.4th 1372, 1377–78 (Fed. Cir. 2025))).[1]

I find that Maschio did not make a disclaimer regarding the relationship between the thrust-bearing element and the transmission drive shaft. Precision cites portions of Maschio's IPR briefing and oral argument in which Maschio argued that the thrust bearing element and the transmission drive shaft were claimed as separate elements in the patent. (D.I. 168 at 31–34). These statements that Precision cites are not so clear and unmistakable as to reach the level of disclaimer. Even if they were, however, they do not support a conclusion that the transmission drive shaft and thrust-bearing element cannot have overlapping structures.

---

[1] *Regeneron* clarified that whether a claim requires distinct components and whether a claimed component overlaps in scope with another claimed component are "two independent claim construction inquiries." *Regeneron*, 130 F.4th at 1380. *Regeneron* cites another case for the proposition that there is a presumption that "separately listed claim limitations may indicate separate and distinct physical structure, but that presumption may always be rebutted . . . ." *Id.* at 1379 n.5. There is also reference to "overlapping claim scope" in *Regeneron*. *Id.* at 1380. Rather than citing to the Court of Appeals analysis which distinguishes these two claim construction inquiries, Precision cites the portion of *Regeneron* which explains the proceedings leading up to the appeal. (*See* D.I. 168 at 36, citing *Regeneron*, 130 F.4th at 1377-78). It appears that Precision is citing *Regeneron* to support its argument that the claim requires distinct components under the *Becton* rule. This would align with its previous disclaimer arguments (D.I. 168 at 31–34) and other cases cited in Precision's sur-reply (*id.* at 36–37). Even if Precision was attempting to cite *Regeneron* to argue the transmission drive shaft and thrust-bearing element overlap in scope, the argument is waived because there were no indications of this argument in either party's briefing until Precision's sur-reply. (*See id.* at 28–38).

12

I nevertheless find that that the transmission drive shaft and the thrust-bearing element are separate components. While the '121 patent does not explicitly list a set of the separate components, the patent read as a whole demonstrates that the thrust-bearing element and transmission drive shaft are separate components with separate functions.

Claim 1 of the '121 patent identifies both the "transmission drive shaft" ('121 patent, col. 4, lines 15–16) and the "thrust-bearing element" ('121 patent, col. 4, lines 36–40). While claim 1 does not contain a numbered list of separate components, *Kyocera Senco Indus. Tools Inc., v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022), or use certain key words between them such as "and," *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004), the components "logically cannot be one and the same." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996). As in *Engel*, the '121 patent describes the location and shapes of the transmission drive shaft and the thrust-bearing element in such a way that they must be distinct components. *Id.*

To understand the relationship between the transmission drive shaft and the thrust-bearing element, it is necessary to understand how the patent places components in the fixed or movable portions. Claims 1 and 10 make clear that the thrust-bearing element is "supported rotatably in the movable portion." ('121 patent, col. 4, lines 38–39, col. 6, lines 2–4). The claims do not identify the location of the transmission drive shaft. However, the specification describes "a motor-driven drive shaft 20, supported in the fixed portion 11." ('121 patent, col. 2, lines 60–61). The specification further explains, "The presence of the transmission requires the shaft 20 to be mounted on the fixed portion 11 of the housing 10." ('121 patent, col. 2, lines 64–65). The different locations of the thrust-bearing element and the transmission drive shaft are important as the movable portion is designed for "the production of a kit for retrofitting . . . by removing the hinge pin 13 and replacing the old movable portion with the aforesaid kit." ('121 patent, col. 3,

lines 60–65). Claim 10 further describes the kit as comprising "the movable portion pre-assembled with[] a thrust-bearing element." ('121 patent, col. 6, lines 2–3). Thus, a component in the movable portion must be separate from a component in the fixed portion.

The specification supports the interpretation that the thrust-bearing element and transmission drive shaft are separate components. *Gaus*, 363 F.3d at 1288. First, the specification describes the end of the transmission drive shaft stating: "The keying between the shaft 20 and the disc 16 is obtained by means of a polygonal profile 21 at the free end of the shaft 20 which protrude beyond the disc 16 and preferably has chamfers 22." ('121 patent, col. 2 line 56–col. 3, line 1). Later, the specification describes how the end of the transmission drive shaft is designed to connect to a portion of the thrust-bearing element, stating:

> The drive element [of the thrust-bearing element] 32 is coupled by means of an internal polygonal profile 35 (similar to that adopted for box-end wrenches) to the polygonal profile 21 of the free end of the shaft 20, the chamfers 22 of which serve to facilitate the centering of the two profiles and the respective engagement.

('121 patent, col. 3 lines 48–52). The way the specification describes the ends of the transmission drive shaft shows that it is a distinct component from the thrust-bearing element. Although the specification describes how the two components are designed to be connected together, this is not a case where the components can be portions of a single structure. *See Retractable Techs., Inc. v. Becton, Dickson & Co.*, 653 F.3d 1296, 1303–04 (Fed. Cir. 2011).

The components also must be separate because the function of the movable portion is not possible if the transmission drive shaft and the thrust-bearing element are the same structure. As previously addressed, claim 10 of the '121 patent describes the kit for retrofitting which contains "the movable portion pre-assembled with[] a thrust bearing element." ('121 patent, col. 10, lines 2–4). The specification further explains the function of the movable portion as "allowing easy opening and closing of the movable portion on the fixed portion" and "easy retrofitting." (*Id.* at

14

col. 4, lines 6–9). Since the transmission drive shaft is mounted in the fixed portion (*id.* at col. 2, lines 61, 64–65), the two components must be separate or else the movable portion's function of easy opening, closing, and retrofitting could not be performed. *Smartrend Mfg. Grp. (SMG), Inc. v. Opti-Luxx Inc.*, __ F.4th __ (Fed. Cir. 2025), No. 24-1616, slip op. at 15–16 (Fed. Cir. Nov. 13, 2025).

"There is nothing in the asserted claims to suggest that the [thrust-bearing element] and the [transmission drive shaft] can be the same structure." *Becton, Dickson & Co.*, 616 F.3d at 1254. On the other hand, the claims and the specification support a finding that the thrust-bearing element and the transmission drive shaft "logically cannot be one and the same." *Engel Indus.*, 96 F.3d at 1405 (Fed. Cir. 1996). Maschio has not offered evidence to refute this presumption. Thus, "transmission drive shaft" has its plain and ordinary meaning and is a separate component from the thrust-bearing element.

4. **"movable portion" (claims 1–3, 8, and 10–12)**

   a. *Maschio's proposed construction*: portion of the housing that is movable relative to the portion that is fixed to the framework of the sowing elements
   b. *Precision's proposed construction*: the "movable portion" of the housing is designed to be movable with respect to the fixed portion without removing it from the fixed portion by being completely separated or detached
   c. *Court's construction*: portion of the housing that is movable relative to the fixed portion. Simply because the portion is removable does not make it movable.

Maschio argues that the Court should adopt its previous construction of "movable portion" which construed the term as the "portion of the housing that is movable relative to the portion that is fixed to the framework of the sowing elements." (D.I. 168 at 38). Precision argues the Court should adopt the same construction but with the limitation that "[t]he 'movable portion' of the housing is designed to be movable with respect to the fixed portion without removing it from the fixed portion by being completely separated or detached." (*Id.* at 38, 41–46). Precision offers two arguments for its position. First, Precision argues that Maschio made a disclaimer during PTAB

15

proceedings requiring that "movable" and "removable" mean different things. (*Id.* at 42). Precision contends that "removable" refers to a portion that is movable by completely separating it from the fixed portion, whereas "movable" allows for the portion to be moved relative to the fixed portion without separating the two portions. (*Id.*). Precision further argues that the '121 patent uses "movable" and "removable" differently. (*Id.* at 43, 48–49). Thus, Precision argues, that "movable" in the '121 patent does not refer to a "removable" portion. (*Id.*).

Maschio responds by arguing that it did not make a clear and unmistakable disclaimer distinguishing "movable" from "removable." (*Id.* at 40). Maschio argues the '121 patent allows for the movable portion to move relative to the fixed portion when the "removable hinge pin" is in place and the movable portion can be completely removed from the fixed portion when the "removable hinge pin" is removed. (*Id.* at 40–41). Maschio asserts that the specification also supports the idea that the movable portion can be separated as the specification describes removing the movable portion to replace it with the kit. (*Id.* at 41). Maschio further argues that the preferred embodiment allows for the movable portion both to be moved relative to the fixed portion and removed by being completely detached. (*Id.* at 46).

I find that Maschio did not make a disclaimer. Precision has not identified any clear and unmistakable statements in which Maschio states that "movable' and 'removable" mean different things in the '121 patent. I find, however, that the '121 patent does distinguish between "movable" and "removable."

The claims only reference the term "movable." Claim 1 explains there is "a portion which is movable relative to the fixed portion and can be closed against the fixed portion." ('121 patent, col. 4, lines 17–19). The use of "movable" in the claims only provides for the "movable portion' to be moved relative to the fixed portion. Nothing in the claims or the specification discloses the

16

movable portion being "movable" because it can be separated from the fixed portion. A device that had a "removable" portion that could only be "moved" by being completely separated or detached would not meet the claim's "movable" requirement.

The '121 patent's specification uses "movable" and "removable" to refer to different concepts. The specification explains the "*movable* portion 12 [is] hinged in the region of a hinge 12*a* on the fixed portion 11 by means of a *removable* hinge pin 13." ('121 patent, col. 2, lines 46–47 (emphasis added)). Here, the patent uses the word "removable" to describe the hinge pin, while the patent only ever describes the movable portion as "movable." The specification then explains that the movable portion can be retrofitted with a kit by "*separat[ing]* the old type of *movable* portion by *removing* the hinge pin 13 and replacing the old *movable* portion with the aforesaid kit." ('121 patent, col. 3, lines 63–65 (emphasis added)). While the specification describes the movable portion as being "separate," it only does so in reference to the "old type of movable portion" that is being replaced. ('121 patent, col. 3, lines 63–64). Otherwise, this portion of the specification further treats the "removable" hinge pin differently than the "movable portion." The specification concludes by describing the advantage of the device which "lends itself to easy retrofitting, all without *removing movable* parts." ('121 patent, col. 4, lines 7–8 (emphasis added)). Although movable 'parts" refers to a different concept than the movable "portion," this section of the specification highlights the patent's use of "movable" and "removable" as two separate concepts. To construe "movable" to include "removable" would be counter to the way the patent uses the terms and other forms of the terms.

Thus, I construe "movable portion" as "portion of the housing that is movable relative to the fixed portion. Simply because the portion is removable does not make it movable."

17

## V. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.